**George RANDALL et al.**

v.

**Gary QUINTAL et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 24, 1996.

Decided March 25, 1996.

As Amended on Grant of Rehearing April 22, 1996.

Douglas J. Payne, Brunswick, for Plaintiffs.

James D. Bivins, Clifford H. Goodall, Augusta, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

ROBERTS, Justice.

■ George E. and Sandra M. Randall, with Frank A. Russell, appeal from the judgment of the Superior Court (Kennebec County, *Mead, J.*) that established the location of the common boundary of their properties with the property of Gary and Maria Quintal. Because the court relied on the Quintals' surveyor, who misused the concept of latent ambiguity, as well as the doctrine that monuments control over course or distance, we vacate the judgment.

The parties agree, and the court found, that the Randall easterly boundary and the Randall/Russell northerly boundaries. are

controlled by a 1910 deed from B.A. Hoyt to Harry R. Mitchell. Hoyt owned the former Henry Roberts homestead that was north of land of C.E. Colby and included the land now owned by Russell, the Randalls, and the Quintals. The property consists of a part of Lot 111 and a part of Lot 108 of the 1834 survey of West Gardiner by Solomon Adams. The Quintals recently acquired the C.E. Colby land, but that boundary is not in dispute.

The Hoyt-to-Mitchell description reads as follows:

> Beginning at the road leading from French's Corner to Spears Corner, so-called: and extending East from said road on line of land of C.E. Colby one hundred and sixteen (116) rods to land of said B.A. Hoyt; Thence extending North on line of land of said B.A. Hoyt forty one and one half rods to land of said B.A. Hoyt; Thence extending West on line of land of said Hoyt one hundred and sixteen (116) rods to said road; Thence extending South on line of said road forty-one and one half (41½) rods.
>
> Said lot being a part of premises conveyed to me by heirs of Henry Roberts by deed dated May 25th, A.D.1901, and recorded in Kennebec Registry of Deeds, Book 437, Page 404, and containing thirty acres, more or less.

■ Surveyor Jan Boucher, on behalf of Russell and the Randalls, described his survey as follows: He measured easterly 116 rods from the side of the road and along a rock wall. He then measured northerly along the road 41½ rods. Then he constructed the northeast corner by the intersection of a north line of 116 rods and an east line of 41½ rods. If the lot had been rectangular, it would be 30.08 acres. As it is, it is approximately 28 acres. Boucher's reliance on backward measurement is appropriate when, as here, the description contains only exact distances and approximate courses. The references in the deed description to land of B.A. Hoyt are not monuments because he is the grantor.

The Quintals' surveyor, Edward Lawrence, disagreed. First, he said the measurement should start in the middle of the road because land bounded on a road extends to the middle of the road. Second, because the eastern end of his south line ended near an intersecting rock wall, and because the course of the intersecting wall was closer to north, and because people in West Gardiner in 1910 usually conveyed to monuments like a rock wall, Lawrence placed the east line along the wall (although not a continuous wall). He also found bits and pieces of barbed wire in rocks and on trees along that east line. Third, he terminated the east line approximately 9 rods short of 41½ because that was a township lot line between Lots 108 and 111 according to the Adams survey, because he found evidence of a wall along the township lot line, and because people in West Gardiner in 1910 liked to rely on monuments such as township lot lines. He also ignored the fact that his north line goes through an old barn, as well as the fact that his acreage was substantially less than 30.

■ The court noted that both surveyors had followed carefully the meandering of the rock wall on the Randalls' south line. (Lawrence changes slightly the bearing of that line eight times.) The court concluded, therefore, that monuments like rock walls and lot lines create a latent ambiguity and should control the location of the boundaries on the face of the earth. We disagree. Because monuments are controlling only if referred to in the deed, there is no ambiguity, latent or otherwise. *Milligan v. Milligan*, 624 A.2d 474, 478 (Me.1993) (physical object not a monument unless the deed description makes reference to it for that purpose) (citing *Proctor v. Hinkley*, 462 A.2d 465, 469 (Me.1983)). Of course, there is a legitimate question whether to measure from the middle or side of the road, but that involves only 1½ rods.

Moreover, the north line established by Boucher is consistent with a 1974 deed creating the Russell lot. More significantly, a 1973 deed from Quintal's uncle to Quintal contains measurement along the road consistent with that north line. The Quintal deed describes a house lot with the south line 56 feet from the north line of land of Rossi (Russell's predecessor), with 200 feet of frontage, and a northwest corner 174 feet

south of the elder Quintal's northwest corner. Those distances add up to 430 feet, a distance consistent with Boucher's survey.

We do not direct the entry of a judgment consistent with Boucher's survey because the location of the starting point in the first call of the controlling legal description is a question of fact to be resolved by the trial court. In addition, the evidence of adverse possession, acquiescence, and other issues raised in the pleadings were not evaluated by the court.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.